James S. COX, Plaintiff–Appellant,

v.

Joe B. HUDDLESTON, in his Official Capacity as the Commissioner of the Department of Revenue for the State of Tennessee, Defendant–Appellee.

Court of Appeals of Tennessee,
Western Section.

May 8, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 28, 1995.

Russell Fowler, Memphis, for Appellant.

Charles W. Burson, Attorney General and Reporter, Charles L. Lewis, Deputy Attorney General, Nashville, for Appellee.

CRAWFORD, Judge.

This case involves the validity of the privilege tax on attorneys assessed pursuant to T.C.A. § 67–4–1701—T.C.A. § 67–4–1708 (1994). Plaintiff, James S. Cox, appeals from the order of the chancery court that denied his motion for summary judgment and granted summary judgment to defendant, Joe B. Huddleston, Commissioner of Revenue for the State of Tennessee.

The facts are undisputed. The statutes involved in this case are codifications of § 8 of Chapter 529, Public Acts 1992. The Act imposes a privilege tax on a large number of vocations, professions, businesses and occupations licensed and regulated by the state, T.C.A. § 67–4–1702(a)(1) through (4), including a privilege tax in the sum of $200 per year upon "[p]ersons licensed as attorneys by the supreme court of Tennessee," T.C.A. § 67–4–1702(a)(5).

Plaintiff is an actively practicing Memphis attorney duly licensed by the Supreme Court to practice law. He is admitted to the bars of all of the courts of Tennessee and both the local and other federal courts. Plaintiff paid the privilege tax in 1992 and 1993 in the total amount of $400.00. In October, 1993, he filed a refund claim with the Department of Revenue claiming that the tax is unconstitutional. The refund claim was denied, and plaintiff filed suit in chancery court pursuant to the provisions of T.C.A. § 67–1–1802(b)(1). The defendant answered the complaint, and both plaintiff and defendant filed motions for summary judgment. The chancellor denied plaintiff's motion for summary judgment and granted defendant's motion for summary

judgment. Plaintiff has appealed and presents two issues for review.

The first issue for review, as stated in plaintiff's brief, is:

1. Does the tax violate the separation of powers?

Plaintiff asserts that the tax in question is a tax upon the judiciary and violates the separation of powers established in Article II, and the grant of judicial power in Article VI of the Constitution of Tennessee which provide:

## ARTICLE II

### DISTRIBUTION OF POWERS

**Sec. 1. Division of powers.**—The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.

**Sec. 2. Limitation of powers.**—No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted.

## ARTICLE VI

### JUDICIAL DEPARTMENT

**Sec. 1. Judicial power.**—The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established.

Plaintiff argues that the tax is "constitutionally invalid because it is an invasion by the legislature into the role, domain, and function of the judicial branch of government, even though, in general, the gathering of the funds for the state treasury may be an 'instrument of good.'" This argument is premised upon plaintiff's assertion and the

recognized fact that attorneys are considered officers of the court. *See generally* Gibson's Suits in Chancery, § 646 (6th ed. 1982).

Plaintiff primarily relies upon the decision in *Lawyers' Tax Cases,* 55 Tenn. (8 Heisk.) 565 (1875), a group of cases filed by lawyers contesting a privilege tax on lawyers. The Act establishing the tax prohibited the exercise of the privilege of practicing law without first paying the tax and obtaining a license from the county court clerk. The six-man supreme court of that time indicated their diverse views of the Act in question by filing four separate opinions. The result of the multiple opinions is stated by the Chief Justice:

> A majority of the Court hold the act taxing the privilege of practicing law to be unconstitutional; two judges, Turney and Nicholson, holding that the right to practice law is not subject to taxation; two judges, Freeman and McFarland, holding that, even conceding that the legislature may tax the privilege of a lawyer, the present act is unconstitutional, because it requires a new license to be taken out from the Clerk of the County Court, and in connection with the previous laws, makes it unlawful to practice without so doing; two judges, Deaderick and Sneed, holding that the present act is constitutional and valid. Judgment will be entered in the case accordingly.

*Id.* at 661–62.

Although a majority of the Court held that the tax on lawyers was unconstitutional, they reach this result for different reasons. Clearly, the Act in question made the practice of law conditional upon procuring a license from the county court clerk, notwithstanding the fact that the lawyers had previously been licensed to practice. Chief Justice Nicholson, recognizing that lawyers are officers of the court, felt that the participation in the administration of justice is such an integral part of the courts that the tax on the lawyers is a tax on the judiciary and violates the constitutional principle of separation of powers. *Id.* at 630–48.

Justice Turney agreed with the Chief Justice that the Act was unconstitutional, but apparently did so on the basis that he considered the practice of law to embody the right of thought and mental labor and was actually beyond the reach of the taxing powers of the legislature. *Id.* at 648–54. Justices Freeman and McFarland felt that even conceding that the privilege of being a lawyer may be taxed by the legislature, the requirement in the Act of a new license is unconstitutional and violates the separation of powers. *Id.* at 639–48. Justices Deaderick and Sneed felt that the practice of law is a privilege subject to the power of taxation. *Id.* at 654–61.

An analysis of these opinions reveals that four of the six members of the Court reached the conclusion that the taxing of lawyers is valid, but the invalidity exists by placing other restrictions on the right to operate under the license granted by the Supreme Court. Justice Freeman stated:

> It is proper to add, that under this view of the case, the lawyer may be taxed as such, and his right or franchise pay as other valuable property or franchises, its due proportion of the burdens of the State according to its value, to be ascertained in such manner as the Legislature may deem best.

> \*     \*     \*     \*     \*     \*

> The result is, that the lawyer may be taxed, that is, his privilege may be taxed as property, but his license can not be revoked. That this privilege already granted can only be taxed on its value as other property. But that his granted privilege can not be granted in the future, because the effect of this is to revoke that already granted.

*Id.* at 647–48.

The Act under attack in the instant case is a revenue act and specifically provides that the tax is not a regulatory fee. T.C.A. § 67–4–1705. It is quite clear that the failure to pay the tax does not in any way constitute a ground for discipline or other action. T.C.A. § 67–4–1704. The language of the Act indicates the legislature's acknowledgement that the regulation of the practice of law is left to the Supreme Court under the division of powers clause.

■ The authority of the Supreme Court to regulate and control the practice of law is derived from the grant of judicial power in Article VI, Sec. 1 of the Tennessee Constitution. *Barger v. Brock*, 535 S.W.2d 337, 340 (Tenn.1976). "The inherent right of Courts to prescribe qualifications necessary for the practice of law does not mean that the Legislature is without authority in that field." *Petition for Rule of Court Activating, Integrating and Unifying the State Bar of Tennessee*, 199 Tenn. 78, 282 S.W.2d 782, 784 (1955). However, "... where the legislative enactment is in direct conflict with and totally abrogates the Court's authority with regard to the practice of law, the statute is unconstitutional." *Newton v. Cox*, 878 S.W.2d 105, 111 (Tenn.1994).

Various jurisdictions have considered the validity of privilege or occupational taxes on lawyers, and the overwhelming majority of courts throughout the country have sustained the validity of such taxes. *See* David B. Sweet, *Validity of State or Municipal Tax or License Fee Upon Occupation of Practicing Law*, 50 A.L.R. 4th, 467 (1986). The prevailing view seems to be that expressed by the Supreme Court of Connecticut in *Lublin v. Brown*, 168 Conn. 212, 362 A.2d 769 (1975):

The inherent power of the judicial department to control admission to the bar, to discipline its members, and to prescribe rules for their conduct as officers of the court does not confer upon those members immunity or exemption from tax assessments or civil and criminal statutes of general application. We find ourselves in agreement with the observations of the Supreme Court of Utah as expressed in *Davis v. Ogden City*, 117 Utah 315, 328, 215 P.2d 616: As members of the bar, their admission to practice and their professional conduct after admission are essentially matters to be regulated by the judicial department of the state. As members and citizens of the state, county and city, their rights, privileges and immunities, as well as their duty to pay a fair share of the expenses of government, like those of any other citizen, are controlled by the laws, ordinances and regulations of the political body of which they are a part and from which they receive protection.

No one could reasonably contend that lawyers as a class are not subject to laws enacted pursuant to the police powers of the state or municipality and the members of the profession would protest any attempt to deny to them the services afforded by the various sovereignties. There is no rational basis for a contention that lawyers are privileged because of their calling.... A license to practice law issued by the state does not grant immunity from taxation.

*Id.* at 777.

We should also note that plaintiff comments in his brief that the office of judge is subject to "the political caprice of other departments" because the tax applies to judges. The question of the application of the tax to judges is not before this Court and requires a construction of the Act as it might be applicable pursuant to the provisions thereof. This question is for another day.

■ We find nothing in the Act in question that conflicts with the authority of the Supreme Court with regard to the practice of law. It is a fact of life that funds are needed to provide a system of justice, and that taxation is the accepted method for raising a majority of those funds. It is not too "far fetched" to consider taxes to fund the courts as an aid to the Supreme Court's exercise of the judicial power granted by the Constitution. We hold that the privilege tax, as applied to lawyers, does not violate Article II, Sections 1 and 2 of the Constitution of Tennessee.

The second issue presented for review, as stated in plaintiff's brief, is:

### 2. Is bar membership a Section 28 "privilege?"

■ "The Legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct...." Tenn. Const., art. II, § 28(c). Plaintiff argues that the practice of law is not a privilege that can be taxed, but is an absolute vested right. Concerning the definition of privileges as used in the Constitution of 1870, our Supreme Court in *Jenkins*

*v. Ewin,* 55 Tenn. (8 Heisk.) 456 (1872) noted that the Court was not disposed to change the definition of the word previously adopted by the legislature as to the Constitution of 1834. The Court said:

> In 1859, in the case of the Mayor and Aldermen of Columbia v. J.L. Guest, Judge Caruthers used the following language: "What are privileges, is a question of construction dependent upon the general law. We have defined it in several cases to be, the exercise of an occupation or business, which require a license from some proper authority, designated by a general law, and not open to all, or any one, without such license. It is a power of the Legislature alone to create privileges, and forbid their exercise without license."

*Id.* at 475.

T.C.A. § 23–1–108 (1994) provides:

**23–1–108. License and oath required.**—No person shall practice law as an attorney, solicitor, or counselor in this state without a license issued by the supreme court of the state and without first having taken and subscribed to an oath in open court, or before a clerk of a court of record in unusual circumstances subject to the approval of the supreme court, to support the constitutions of the state of Tennessee and of the United States and to truly and honestly demean such person in the practice of the profession to the best of such person's skill and ability.

Clearly, this statute satisfies the definition of privilege set out in *Jenkins.* Moreover, in *Gregory v. City of Memphis,* 157 Tenn. 68, 6 S.W.2d 332 (1928), our Supreme Court, in dealing with Section 5772 of Shannon's Code, the predecessor to T.C.A. § 23–1–108, said:

> The legislature, in our opinion, intended to make the practice of law in any of the courts in this state a privilege, which it had authority to do. (citation omitted).

*Id.* at 332.

The practice of law is an honorable profession and clearly the members of the profession exercise a privilege granted by the issuance of a license from the Supreme Court. Our legislature has the constitutional power to tax privileges, just as it has the power to tax merchants and peddlers. Persons that exercise privileges should not be given preferential treatment and allowed to avoid their fair share of the tax burden when they, like other holders of licenses, can derive a lucrative income from the exercise of the privilege. "The profession [the practice of law] has no special privilege from that of other occupations." *Ex parte Dixon,* 43 Nev. 196, 183 P. 642, 643 (1919). In *Cousins v. State,* 50 Ala. 113, 20 Am.Rptr. 290 (1874), the court said:

> There is nothing particularly sacred in the profession or business of a lawyer, which puts him above the legislative power to place on his shoulders his just share of the necessary burdens of the state.... [H]e has no more right to avoid his duty, than the tobacco dealer, the peddler, or the citizen who publishes a newspaper, or bakes bread.

*Id.* at 115.

Our Supreme Court has clearly determined that the practice of law is a privilege, and we find no just reason why the exercise of this privilege should not be subject to taxation, along with the exercise of any other privileges and occupations as determined by the legislature. The judgment of the trial court is affirmed. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

FARMER, J., concurs.

HIGHERS, J., not participating.