Louis F. Gilberti, successor to Highlands and Gilberti, Architects, Appellant *v.* The City of Pittsburgh, a Municipal Corporation, Appellee.

Argued March 13, 1985, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Mark A. Griffith,* with him, *Lisle A. Zehner, III, Davis, Reilly & Zehner, P.C.,* for appellant.

*Ronald H. Pferdehirt,* Assistant City Solicitor, with him, *Grace Harris,* Assistant City Solicitor, and *D. R. Pellegrini,* City Solicitor, for appellee.

OPINION BY JUDGE DOYLE, May 29, 1985:

This is an appeal by Louis F. Gilberti from a decision and order of the Court of Common Pleas of Allegheny County dismissing Mr. Gilberti's appeal of a deficiency assessment by the City of Pittsburgh (City) for the City's Business Privilege Tax (Tax). Specifically, Mr. Gilberti appeals a deficiency of $2,103.55 for the tax years 1977 through 1980.

The City has enacted the Tax pursuant to the statutory authority set forth in Section 2 of The Local

Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6902 (Enabling Act). The pertinent portion of the Enabling Act permits political subdivisions such as the City to:

> . . . levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property *within the limits of such political subdivisions.* . . . (Emphasis added.)

Section 243.02 of the Pittsburgh Code (Code) establishes the Tax by providing that "[e]very person engaging in any business in the City shall pay an annual tax at the rate of six mills on each dollar of volume of the gross annual receipts thereof." "Business" is defined in Section 243.01(a)(1) of the Code as:

> Carrying on or exercising whether for gain or profit or otherwise within the City any trade, business, including but not limited to financial business as herein defined, profession, vocation, service, construction, communication or commercial activity, *or rendering services from or attributable to a bona fide City office or place of business.* (Emphasis added.)

Section 243.01(e)(3) of the Code, however, provides an exclusion for:

> [r]eceipts or that portion thereof attributable to interstate or foreign commerce or to a bona fide office or place of business regularly maintained by the taxpayer, outside the City limits, and not for the purpose of evading tax payment, *and those receipts which the City is prohibited from taxing by law.* Such receipts shall be segregated so that only that part of the receipts which is properly attributable and allo-

cable to the doing of business in the City shall be taxed hereunder. (Emphasis added.)

The facts as found indicate that Mr. Gilberti, an architect, had a bona fide office in the City, but no such office outside of the City. In determining the amount he owed for the Tax, he excluded from his calculation of gross receipts a portion of income which he maintained was attributable to onsite supervision of a construction project outside the City limits. The City deemed the exclusion to be improper. Thus, the question to be considered here is whether the City may impose its Tax upon the entire gross receipts associated with services rendered in part outside the City, when the taxpayer's sole place of business is located within the City.

Mr. Gilberti asserts that the City, by taxing activities outside of its boundaries, has exceeded its authority under the Enabling Act, which Act restricts the City's taxing authority to "within the limits of the political subdivision." Thus, he maintains that to the extent the Tax is imposed on out-of-city activities it is prohibited by law and, therefore, constitutes an exclusion under Section 243.01(e)(3) of the Code. The City argues that if there is a "nexus" between the City and the activity taxed there is authority under the Enabling Act to tax the out-of-city receipts.

The trial court, in dictum, indicated that it believed the City had exceeded its authority and expressed its desire to "remand the matter back to the City for a hearing to determine what income was generated from services actually performed outside the City and to exclude such income from the taxpayer's gross income and not to make the determination on whether or not the income was generated through a bona fide office outside the limits of the City." It refused to do so, however, believing itself to be bound by *Katselas v.*

*City of Pittsburgh,* 127 P.L.J. 111 (1978), *aff'd per curiam* No. 2512 C.D. 1977, filed December 19, 1978.[1]

*Katselas* dealt with whether a taxpayer had established a bona fide out-of-city office and enumerated criteria to be considered in making such a determination. But, a close reading of *Katselas* indicates that the *legality* of taxing out-of-city receipts was never challenged. Instead, the parties assumed such a taxing provision was proper and *merely challenged the legal sufficiency of the evidence* which established that no bona fide out-of-city office existed. Thus, the trial court's reliance on *Katselas* as controlling on the issue of whether the City exceeded its authority is misplaced.

What is controlling is *Borough of Brookhaven v. Century 21,* 57 Pa. Commonwealth Ct. 211, 425 A.2d 466 (1981). *Brookhaven* involved a business privilege tax and accompanying regulation. The regulation provided that:

> [i]f a person engaged in a profession or vocation or in rendering personal services maintains a place of business only in the Borough of Brookhaven, the *entire receipts* from personal services *must be included* in the measure of the tax *whether or not the services are performed in the Borough of Brookhaven.* Receipts will be deemed attributable to the Borough of Brookhaven if they result from the efforts of employees who work in, or from, or

---

[1] *Katselas* was an unpublished order of this Court. The parties disagree as to whether it was correctly relied on as precedent by the trial court. Our internal rules now provide that "[a]n unreported *opinion* of this Court may not be cited as precedent or for any other purpose in any brief, argument or subsequent opinion." 210 Pa. Code §67.15. We had no such rule at the time the trial court issued its opinion in November 1982.

are attached to taxpayer's Borough of Brook-
haven place of business. (Emphasis added by
the Court.)

*Id.* at 213, 425 A.2d at 467. This Court in examining
the *Brookhaven* regulation, and upholding the trial
court's determination that it was invalid, noted that
"taxing statutes are strictly construed; in cases of
doubt the construction should be against the govern-
ment." *Id.* at 214, 425 A.2d at 467. We further stated
that to the extent an ordinance conflicts with its en-
abling legislation the ordinance is void. *Id.* We held
that the Brookhaven regulation "which taxes *all* re-
ceipts from services *'whether or not* the services are
performed in the Borough' . . . is clearly an invalid
extension of Brookhaven's power under the enabling
Act." *Id.* (Emphasis added by the Court.) We
added, "to the extent that Brookhaven is taxing ser-
vices performed outside its limits, [its] intention [to
do so] is futile." *Id.* at 215, 425 A.2d at 468. Al-
though *Brookhaven* was not concerned with the ques-
tion of whether a bona fide out-of-city office existed,
it was concerned with whether the Borough had the
power to impose a business privilege tax on activities
going on without its borders. We found it had no
such power under the same enabling act that controls
here. Thus, under *Brookhaven,* the City lacks the
power to impose a business privilege tax on gross re-
ceipts arising from services performed outside the
City.[2] Accordingly, under the rationale in *Brook-
haven* we declare the words "or rendering services

---

[2] We recognize the inherent difficulty with the application of
such a principle. For instance, while a fee paid for attending a
meeting outside the confines of the municipality would be clearly
exempt, income attributable to a work product which was generated
both by gathering information at such an "outside" meeting and
fashioning or processing that information into a final work product
in an office within the confines of the municipality, would be very

from or attributable to a bona fide City office or place of business'' appearing in Section 243.01(a)(1) of the Code to be invalid.

The City's argument that the tax has already been declared constitutional in *F.J. Busse Co. v. City of Pittsburgh,* 443 Pa. 349, 279 A.2d 14 (1971), is not determinative of the outcome here because that case held only that the City had the power to enact *a* business privilege tax. *Busse* did not consider the constitutionality of the tax *as applied to out-of-city activities.* Finding *Brookhaven* to be controlling, we reverse and remand for recomputation of the Tax.

## ORDER

Now, May 29, 1985, the portion of Section 243.01 (a)(1) of the Code which reads "rendering services from or attributable to a bona fide City office or place of business'' is declared invalid. The decision and order of the trial court No. SA 669 of 1982, dated November 24, 1982 is reversed and the case is remanded for recomputation of the Tax owed based only upon gross receipts attributable to activities taking place within the City. Jurisdiction relinquished.

---

difficult to bifurcate into taxable and nontaxable income. Nevertheless, difficulty with the proof of facts and burden of proof has to be distinguished from the principle of law at issue.

---

DISSENTING OPINION BY JUDGE BARRY:

I respectfully dissent. The *Borough of Brookhaven* case, if it is to be construed in the manner suggested by the majority, in my judgment, should be overruled. I am not so sure that the decision in *Brookhaven* could not be interpreted so as not to require its being overruled. That case apparently did not involve a specific taxpayer and was an attack on

the Brookhaven ordinance by a professional and business association in the Borough. The ordinance by its terms required the inclusion in the calculation of the tax of all receipts "whether or not the services are performed in the Borough of Brookhaven." It would, therefore, appear that the ordinance on its face might be construed to attempt illegally to tax businesses that had a bona fide office in another jurisdiction. Furthermore, the Court's reliance in *Brookhaven* on *Philadelphia Appeal,* 383 Pa. 428, 119 A.2d 205 (1956), seems especially misplaced. In that case, the Supreme Court refused to allow a tax on the privilege of transferring realty when the deed was executed, acknowledged, delivered and accepted in New York City. That case, in my judgment, was decided solely on the basis of the provisions of the Sterling Act, Act of August 5, 1932, Ex. Sess. P.L. 45, *as amended,* 53 P.S. §15971 *et seq.,* formerly 53 P.S. 4613 *et seq.* That act under its terms seemed to allow a tax only on transfers of real estate which occur physically in the City. I don't think the Local Tax Enabling Act can reasonably be construed to prohibit a realty transfer tax, for example, on a transaction involving Pittsburgh real estate which might be closed in a borough or township in Allegheny County, rather than in the City of Pittsburgh.

*O.H. Martin Co. v. Sharpsburg Borough,* 376 Pa. 242, 102 A.2d 125 (1954), cited in *Brookhaven,* can also be distinguished. Sharpsburg imposed, by ordinance under the Local Tax Enabling Act, a business privilege tax on all "persons offering any service . . . to the general public . . . from places . . . within the borough." The issue of the case was the validity of the ordinance insofar as it might be construed to tax receipts from interstate commerce. Plaintiff did not challenge the authority of Sharpsburg to tax intra-

state transactions outside the limits of the borough. The *Brookhaven* majority notes that "the taxable event in *O.H. Martin* is significantly different from the taxable event here." Footnote 2, page 216. The opinion seems to imply that the wording of the ordinance might make the difference. If this is a fair construction, then *Brookhaven's* discussion of *Martin* is flawed. In both *Martin* and *Brookhaven* the issue was the same—the construction of the Local Tax Enabling Act. I must conclude, as Judge ROGERS did in his dissenting opinion in *Brookhaven,* that the majority opinion in that case is incorrect. To hold otherwise would make enforcement of the Local Tax Enabling Act impossible. If, for example, a lawyer tries cases in fifteen counties but has only one office, a tax should be paid on all the receipts and only in the jurisdiction where his office is. We must presume that the General Assembly did not intend a result which is absurd or unreasonable. *Fireman's Fund Insurance Company v. Nationwide Mutual Insurance Company,* 317 Pa. Superior Ct. 497, 464 A.2d 431 (1983); 1 Pa. C.S.A. 1922(1).

I would overrule *Brookhaven* to the extent it is inconsistent with the present case, and find for appellee.

Judge CRAIG joins in this dissent.